**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mario Caudillo, | No. CV-17-00114-TUC-DTF |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Mario Caudillo ("Caudillo") filed this action pursuant to 42 U.S.C. § 405(g). Caudillo seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. 1.) Before the Court are Caudillo's opening brief, the Commissioner's answering brief, and Caudillo's reply brief. (Docs. 22, 23, 24.) The parties have consented to a decision being rendered by the undersigned United States Magistrate Judge. (Doc. 19.) For the reason set forth below, the decision of the Administrative Law Judge will be affirmed.

## BACKGROUND

### Procedural Background

On September 18, 2012, Caudillo filed an application for Social Security Benefits under Title XVI alleging a disability onset date of August 25, 2011. On April 1, 2013, Caudillo's claim was denied at the initial level. On September 16, 2013, Caudillo's claim was denied on reconsideration. On February 5, 2015, Caudillo amended his alleged onset date to October 1, 2013. On May 26, 2015, a hearing was held before Administrative

Law Judge George W. Reyes (the "ALJ"). On August 27, 2015, the ALJ issued an unfavorable decision. On October 19, 2015, Caudillo timely filed a request for review to the appeals council. On January 19, 2017, Caudillo's request for review was denied. The ALJ's unfavorable decision is the Commissioner's final decision for purposes of this Court's judicial review under 42 U.S.C. § 405(g).

**Factual Background**

Caudillo has a high school education and since graduating high school has never generated an annual income greater than $7,700. (Administrative Record ("AR") 26, 69-70, 227-228, 259.) As a result, Caudillo has no past relevant work. (AR 26.) Caudillo's more recent earnings derive from automobile detailing work. (AR 68-69, 231-232, 259.)

Caudillo alleges disability from degenerative disc disease, shoulder impairments, asthma, COPD and anxiety. (AR 258.) A 2001 MRI of Caudillo's cervical and lumbar spine revealed disc bulging and protrusions at multiple levels of his cervical spine, including C6-C7 spondylosis producing moderate to severe right foraminal stenosis and disc bulging in the lumbar spine at L5-S1. (AR. 432.) In 2013, Caudillo was taken to the emergency room with severe lower back pain. (AR. 601.) His spine was tender from T1 through L5-S1. (AR 602.) An MRI taken on October 28, 2013 revealed posterior ridging, a disc bulge, and bilateral neural forminal encroachment related to facet hypertrophy at L5-S1. (AR 606.)

On February 28, 2013, state agency consultative examiner Dr. Marilyn Orenstein, M.D., opined in part that Caudillo was unlimited in his ability to handle, finger and feel. (AR 90.) On March 27, 2013, consultative examiner Dr. Jerome Rothbaum, M.D., observed absent sensation to light touch on the first, second, and third fingers of Caudillo's right hand and inconsistent sensation on his left hand. (AR 544.) Dr. Rothbaum opined that Caudillo could lift 20 pounds occasionally, ten (10) pounds frequently, could occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, reach, handle, finger, and feel, and should not work around heights, moving machinery, chemicals, or gasses. (AR 546-547.)

On September 12, 2013, state agency consultative examiner, L.M.W., M.D., opined in part that Caudillo was unlimited in his ability to handle, finger and feel. (AR 109.) An MRI taken in 2015 showed disc bulging at the L5-S1 level with super imposed right paracentral disc extrusion with slight caudal extension, abutting and possible affecting the right S1 nerve. (AR 698.) At a supplemental hearing held on May 26, 2015, testifying medical expert Dr. Anthony Francis, M.D., testified that he would assign Caudillo a medium residual functional capacity (RFC) with limitations on exposure to fumes, dusts, and unprotected heights, although it would be within the discretion of the ALJ to assign a light RFC based upon "the other factors." (AR 42-43.) Dr. Francis testified:

> Well, you know, going through this chart Claimant basically has neck, back – neck and back pain, he's got some issues with maybe asthma, although he's a smoker. And he's had this – these blebs, which are basically sort of like balloons on the lungs that have popped and caused pneumothoraces. So I mean that's the identifiable objective pathology. And then we've got anxiety and possible substance issues. […] So just basically neck pain, low back pain, and then the lung problem, basically he would be at a medium RFC, you know following Social Security rules which require the maximum RFC with, you know, possibly no unprotected heights and then limitations on noxious fumes, dust and that sort of thing.

*Id*. Dr. Francis did not opine on any limitation to Caudillo's ability to handle, finger and feel. (AR 39-52.)

The ALJ determined at Step Two was that Caudillo's severe impairments are degenerative disc disease and asthma. Caudillo does not contest this determination. (Doc. 22.) At Step Five, the ALJ determined Caudillo had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations:

> The claimant is unable to climb ladders, ropes or scaffolds, but he is able to occasionally climb ramps, stairs, use a step stool, and occasionally stoop, crouch or crawl. He is limited to occasional bilateral overhead reaching. He must avoid concentrated exposure to extreme cold, vibrations, chemicals, fumes, odors, dust, gases, poor ventilation or the like. He must also avoid

> concentrated exposure to hazards such as unprotected heights or dangerous machinery. The claimant cannot work in a fast production environment, such as the pace of work in a McDonald's or In-N-Out hamburger restaurant. He is further limited to simple, routine tasks. He is able to attend and concentrate in two hours (*sic*) blocks of time throughout an eight-hour workday with the two customary ten to fifteen minute breaks, and the customary thirty to sixty minute lunch period.

(AR 19.) Relying upon the testimony of a vocational expert (VE) the ALJ determined that Caudillo could perform the jobs of either a (1) remnants cutter, Dictionary of Occupational Titles (DOT) 781.687-150, Light, SVP 1; (2) fruit cutter, DOT 521.687-066, Light, SVP 1; or (3) mail sorter, DOT 222.687-022, Light, SVP 2. (AR 27.)

**Issues Raised**

Caudillo raises two claims of error. First, Caudillo argues that the ALJ failed to resolve inconsistencies between the VE's testimony and the DOT. (Doc. 22 at pp. 9-12.) Caudillo points out that the ALJ's hypothetical to the VE included a restriction to occasional bilateral overhead reaching and the DOT description of the jobs identified by the VE require frequent reaching with no mention of which direction the reaching is performed. *Id*. at pp. 9-10. As such, Caudillo argues that there is a conflict between the RFC and the jobs identified by the DOT. *Id*. at p. 12. Caudillo also points out that the mail sorter job identified by the VE has a Reasoning Level of 2 and contends that this Reasoning Level is inconsistent with the RFC's restriction to simple, routine tasks.

Second, Caudillo argues that the ALJ erred by assigning "inappropriate weight" to the opinion of consultative examining physician Dr. Jerome Rothbaum. *Id*. at pp. 12-13. Caudillo argues that Dr. Rothbaum limited Caudillo to occasional reaching, handling, fingering and feeling. *Id*. at p. 12. He contends that the ALJ's failure to include any manipulative limitations in the RFC (apart from occasional bilateral overhead reaching) was error. *Id*. at p. 13.

Caudillo requests remand for further consideration of the evidence. (Doc. 24 at p. 6.) The Commissioner argues against both claims of error. (Doc. 23 at pp. 4-16.)

…

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing (1) she is not working; (2) she has a severe physical or mental impairment; (3) her impairment meets or equals the requirements of a listed impairment; and (4) her RFC precludes her from performing her past work, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). The step five determination is made on the basis of four factors: the claimants RFC, age, education and work experience. *Id.* "The Commissioner can meet []his burden through the testimony of a vocation expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla but less than a preponderance" of relevant evidence which a reasonable mind might accept as adequate to support the ALJ's decision. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 01035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the

ALJ." *Matney v. Sullivan*, 981 F.3d 1033, 1019 (9th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

**DISCUSSION**

**Step Five Decision**

As mentioned above, Caudillo argues that the ALJ erred in failing to resolve inconsistencies between the VE's testimony and the DOT. (Doc. 22 at pp. 9-12.) Caudillo argues there is an inconsistency in the reaching requirement of the RFC and the reaching requirement of the three (3) jobs identified by the VE. Caudillo also argues there is a conflict between the RFC's restriction to simple routine tasks and the mail sorter job which has a Reasoning Level of 2. (Doc. 22 at p. 11.)

In opposition, the Commissioner argues first that Caudillo waived this issue by failing to raise it at the hearing. (Doc. 23 at pp. 4-5.) The Commissioner next argues that Caudillo's argument fails on the merits because in order for a difference between a VE's testimony and the DOT to be characterized as a conflict the difference must be "apparent." *Id*. at p. 5. The Commissioner argues that reaching is not an essential, integral, or expected part of the three jobs that the VE identified. *Id*. at p. 6. The Commissioner points out that the essential and integral tasks for a remnants cutter include cutting defective cloth along markings, using hand shears, and sorting remnants. *Id*. (citing DOT 789.687-150, *available at* 1991 WL 681287). The essential and integral tasks for a fruit cutter include cutting dried, fresh, candied, or crystallized fruit using a knife. *Id*. at p. 7 (citing DOT 521.687-066, *available at* 1991 WL 674221). The essential and integral tasks for a mail sorter include sorting bundles, boxes, or lots of articles, reading delivery or route numbers, placing articles in bins, and sorting sacks of mail. *Id*. (citing DOT 222.687-022, *available at* 1991 WL 672133). Since reaching is not an essential and integral part of the jobs identified by the VE, any conflict was not "apparent," and it was not error for the ALJ rely upon the testimony of the VE. *Id*.

The Court disagrees with the Commissioner that Caudillo waived this argument. In *Sims v. Apfel*, 530 U.S. 103, 108-12 (2000), the Supreme Court declined to require

issue exhaustion in social security proceedings, noting the inquisitorial rather than adversarial nature of the proceedings. 530 U.S. at 110-12 (claimant did not waive issue simply because she failed to exhaust it before the Appeals Council). *See also, Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2016) ("[O]ur law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts between the vocational expert's testimony and the DOT[.]" citing *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)). Caudillo's counsel's failure to question the VE about the potential conflict between the DOT descriptions and the reaching restriction in the RFC does not preclude Caudillo from raising the issue here.

The best source for how a job is performed is usually the Dictionary of Occupational Titles. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); 20 C.F.R. §§ 404.1566(d) and 416.966(d); Soc. Sec. Rul. No. 82-61). "In determining whether an applicant is entitled to disability benefits, an ALJ may consult a series of sources, including a VE and the DOT." *Lamear*, 865 F.3d 1205. "Presumably, the opinion of the VE would comport with the DOT's guidance." *Id*. "But '[i]f the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.'" *Id.* (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)). (Footnote omitted.)

A conflict must be "obvious or apparent" to trigger the ALJ's obligation to inquire further. *Id*. (citing *Gutierrez*, 844 F.3d at 808). Determining whether there is an apparent conflict requires an examination of the DOT's listing of job requirements that are essential, integral, or expected. *Id*. Tasks that are not essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. *Id*. Where the frequency of a task, based on common experience, is "unlikely and unforeseeable," there is no error when the ALJ does not ask further questions of the VE. *Guiterrez*, 844 F.3d at 808-09.

The Court agrees with the Commissioner's argument that any conflict between the DOT job descriptions and the VE's testimony was not apparent such that the ALJ's failure to ask the VE about the potential conflict was not error. Reaching is defined as is extending arms and hands in any direction. *See* Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. C; Soc. Sec. Rul. No. 85-15 ("reaching" defined as "extending the hands and arms in any direction"). When an occupation requires overhead work, the DOT narrative description will explicitly mention that requirement. *Goodman v. Colvin*, 2016 WL 4190738, at *15 (D. Ariz. 2016) (quoting *Gonzales v. Colvin*, 2013 WL 3199656, at *3-4 (D. Or. 2013)).

As mentioned above, there is no mention of overhead work in the description of the essential and integral tasks for the jobs of remnants cutter, fruit cutter and mail sorter jobs. *See* DOT 789.687-150, *available at* 1991 WL 681287 (essential and integral tasks for a remnant cutter include cutting defective cloth along markings, using hand shears, and sorting remnants); DOT 521.687-066, *available at* 1991 WL 674221 (essential and integral tasks for a fruit cutter include cutting dried, fresh, candied, or crystallized fruit using a knife); and DOT 222.687-022, *available at* 1991 WL 672133 (essential and integral tasks for a mail sorter include sorting bundles, boxes, or lots of articles, reading delivery or route numbers, placing articles in bins, and sorting sack of mail). In the Court's experience cutting remnants and fruit would typically performed at or about waist level and sorting sacks of mail would typically performed at or below shoulder level.

The out of district cases relied upon by Caudillo, *White v. Colvin*, 2016 WL 4402798, at *5 (C.D. Cal. 2016) and *Harrison v. Colvin*, 2016 WL 1258447, at *3 (C.D. Cal. 2016), are not controlling. Additionally, *Gutierrez* was not cited in either case. After the Ninth Circuit's decision in *Gutierrez*, this Court is obligated to determine whether the frequency of a task (in this case, bilateral overhead reaching) is such a common and obvious part of being a remnants cutter, fruit cutter and/or mail sorter that the ALJ should have recognized a potential conflict and questioned the VE about the potential conflict. *See Gutierrez*, 844 F.3d at 807. In light of the description of the jobs as set forth in the

DOT and the Court's common experience, the Court determines that frequent bilateral overhead reaching is an unlikely and unforeseeable part of performing the jobs of remnants cutter, fruit cutter and mail sorter. As such, the Court determines that the ALJ did not err in failing to resolve an alleged apparent conflict between the DOT and the three jobs identified by the VE.

The Court also rejects Caudillo's claim that the mail sorter job, with a Reasoning Level of 2, is inconsistent with the RFC's restriction to simple, routine work. As pointed out by the Commissioner, in *Zavalin v. Colvin* the Ninth Circuit determined that Reasoning Level 2 was consistent with a claimant's limitation to simple work. 778 F.3d at 847 ("Level 2 'appears more consistent' than Level 3 for a claimant limited to simple, routine tasks[.]" quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)). Caudillo does not address *Zavalin* in his reply brief. (Doc. 24 at pp. 2-3.) Furthermore, any error in the ALJ identifying the mail sorter job as appropriate for Caudillo is harmless because the other two jobs identified by the Commissioner are rated as having a Reasoning Level 1 and both of these jobs are available in significant numbers in the economy. *See* DOT 789.687-150 (remnants cutter); DOT 521.687-066 (fruit cutter). *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.")

The ALJ's determination at Step Five is supported by substantial evidence.

**Dr. Rothbaum's Opinion**

As mentioned above, Caudillo's second claim of error is that the ALJ gave "inappropriate weight" to a portion of consultative examiner Dr. Jerome Rothbaum's opinion. Caudillo contends that Dr. Rothbaum's opinion that Caudillo could only occasionally handle, finger and feel could only be rejected by the ALJ providing specific and legitimate reasons supported by substantial evidence. (Doc. 22 at p. 12.) Caudillo argues that the ALJ failed to provide the required specific and legitimate reasons. *Id*. at p. 13.

The Commissioner argues against any error contending that substantial evidence

supports the RFC and that medical opinions that predate the alleged onset date of disability (as Dr. Rothbaum's does) are of limited relevance. (Doc. 23 at p. 10.) The Commissioner also contends that the ALJ reasonably rejected some of Dr. Rothbaum's limitations and the ALJ is not required to recite "magic words" in doing so, as long as this Court can draw specific and legitimate inferences from the findings. *Id*. at p. 11. The Commissioner also argues that even if the ALJ erred (which it does not concede) any error is harmless. *Id*. Relying upon *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1099 (9th Cir. 2014), the Commissioner argues that "an error in failing to properly reject limitations from an acceptable medical source may be harmless if the medical opinion was 'inconsequential to the ultimate nondisability determination…or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id*.

An ALJ must consider and weigh the opinion evidence of record. 20 C.F.R. 416.927(b). The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). When the medical evidence is in conflict the ALJ's conclusion are given greater deference. *See, e.g., Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Rothbaum was the only medical examiner to restrict Caudillo to occasionally handling, fingering and feeling. As mentioned above, neither of the two state agency medical examiners, Dr. Orenstein and Dr. L.M.W., imposed such a manipulative restriction. (AR 91, 111.) There is also no evidence in the record that the testifying medical expert, Dr. Francis, recommended any such manipulative restriction.

The Court fails to see the significance of Commissioner's first argument that the ALJ properly assigned reduced weight to Dr. Rothbaum's manipulative limitations because his opinion was rendered prior to the amended onset date. Dr. Orenstein's and Dr. L.M.W.'s opinions (like Dr. Rothbaum's) were also rendered prior to the amended onset date of October 1, 2013. *See* AR 91 (Dr. Orenstein, opinion rendered April 1,

2013); AR 111 (Dr. L.M.W., opinion rendered September 12, 2013); AR 547 (Dr. Rothbaum, opinion rendered March 27, 2013).

The Court agrees with the Commissioner's argument that any error by the ALJ in failing to assign full weight Dr. Rothbaum's limitation of Caudillo to occasional handling, fingering and feeling is harmless. Errors in social security cases are harmless if they are inconsequential to the ultimate nondisability determination. *Molina,* 674 F.3d at 1115; *Stout v. Commr of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). As pointed out by the Commissioner, the medical evidence contained in the administrative record after October 1, 2013 (the amended onset date) does not support a manipulative limitation such as that proposed by Dr. Rothbaum. For example, in October 2013, Caudillo was examined by Dr. Rosanna Nicoletti, M.D., on the recommendation of his counsel, after complaints of neuropathy. (AR 634.) Dr. Nicoletti noted cervical spine abnormalities but made no corresponding diagnosis. (AR 635-636.) On August 12, 2014, Caudillo presented to the emergency room with right lower quadrant pain and there is no indication in the record that he reported any numbness or tingling in his upper extremities. (AR 629.) In October 2014, Dr. Nicoletti did not indicate any positive neck findings on her examination. (AR 627.) In November 2014, Caudillo complained of neck pain and a physical therapist noted reduced range of motion as well as hypersensitivity to any palpation. (AR 611.) On January 27, 2015, visit to Dr. Nicoletti, Caudillo is not recorded as having raised numbness or tingling of his extremities as an issue and an examination of his cervical spine was not undertaken. (AR 704.) On April 3, 2015, Dr. Kurt Schroeder, M.D., recorded Caudillo's chief complaint as being "discuss meds for back." (AR 702.) Dr. Schroeder recorded Caudillo as having a "little bit" of degenerative joint disease in his cervical spine. (AR 700.) Dr. Schroeder's examination revealed full motor strength and his sensory finding were unremarkable. *Id.*

In reply, Caudillo does not dispute the evidence in record but argues that a determination that any error by the ALJ was harmless would run afoul of the rule prohibiting *post hoc* rationalizations announced in *SEC v. Chenery*, 332 U.S. 194, 197

(1947). The Court disagrees. Although it is true that this Court's review of the ALJ's decision is generally constrained by the ALJ's reasoning, the rule in *Chenery* does not preclude a harmless error analysis. *See, e.g., Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226, 1227 (9th Cir. 2009) (determining district court had run afoul of *Chenery* in determining the issue of whether claimant had transferable skills but, as to another issue, district court did not error in concluding that any error by the ALJ in discounting the claimant's testimony was harmless).

The Court is not rationalizing, *post hoc*, that the reason the ALJ gave limited weight to Dr. Rothbaum's opinion is because of the other medical evidence in the record. Rather, the Court determines that any error on the part of the ALJ in failing set forth specific and legitimate reasons for assigning limited weight to Dr. Rothbaum's manipulative limitations is harmless in light of the overwhelming medical evidence in the record that does not support such a limitation. In light of the medical evidence after October 1, 2013 and that neither Drs. Orenstein, L.M.W., nor Francis imposed such a manipulative restriction, any error on the part of the ALJ in failing to set forth specific and legitimate reasons for assigning limited weight to Dr. Rothbaum's opinion is harmless.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

Dated this 28th day of June, 2018.

Honorable D. Thomas Ferraro
United States Magistrate Judge